## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------ x
FRANK P. CAMPITI,                :
                                 :
         Plaintiff,              :
                                 :
v.                               :
                                 :
MERRICK GARLAND, Attorney        :   Civil No. 3:22-cv-177 (AWT)
General of the United States,    :
and STEVEN DETTELBACH, Director, :
Bureau of Alcohol, Tobacco,      :
Firearms and Explosives,         :
                                 :
         Defendants.             :
------------------------------ x
```

### RULING ON MOTION TO DISMISS

Defendants Merrick Garland and Steven Dettelbach have moved to dismiss plaintiff Frank P. Campiti's Complaint (ECF No. 1), in which he claims that 18 U.S.C. § 922(g)(1) is unconstitutional as applied to him. For the reasons set forth below, the defendants' motion to dismiss is being granted.

### I.  BACKGROUND

The plaintiff is a U.S. citizen and resident of Connecticut who intends to purchase and possess firearms for self-defense within the home. On January 30, 1987, the plaintiff was indicted in Massachusetts state court for receiving stolen property in violation of Mass. Gen. Laws ch. 266, § 60. He was arraigned on March 4, 1987 and released on his own recognizance. The state court personal recognizance form did not inform the plaintiff

that he could not possess or own firearms and ammunition while under indictment.

On August 29, 1987, the plaintiff purchased ammunition from a federally licensed firearms dealer. At the time of the purchase, the plaintiff had a valid Firearms Identification Card issued by the Commonwealth of Massachusetts pursuant to Mass. Gen. Laws ch. 140, § 122, which allowed him to purchase and possess ammunition, as well as a valid Massachusetts Hunting License. In October 1987, state police encountered the plaintiff waiting in a vehicle while the plaintiff's cousin, who was also his co-defendant, purchased ammunition from the same dealer. Police conducted a search of the dealer's ammunition sales log and determined that the plaintiff had purchased ammunition from the dealer in August 1987. This information was shared with the Bureau of Alcohol, Tobacco, Firearms and Explosives.

On October 28, 1987, the plaintiff was indicted in the District of Massachusetts for unlawful receipt of ammunition in violation of 18 U.S.C. § 922(n),[1] a crime punishable by imprisonment for a term exceeding one year. On July 13, 1988, the plaintiff pled guilty. The plaintiff was sentenced to an eighteen-month term of probation and a mandatory special assessment of fifty dollars. He completed probation successfully

---

[1] The docket sheet included in the Complaint lists the offense as "[u]nlawful receipt of ammunition, 18:922(a)." ECF No. 1-2 at 1.

and was discharged on May 14, 1990. The plaintiff has not been convicted of any other crime since he completed his term of probation, but under 18 U.S.C. § 922(g)(1), he is barred from lawfully obtaining a firearm due to his 1988 felony conviction.

## II.   LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 550, 555 (2007) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citations omitted). However,

the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 568.

"The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Mytych v. May Dep't Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999) (quoting Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transp. Local 504, 992 F.2d 12, 15 (2d Cir. 1993). "[I]n some cases, a document not expressly incorporated by reference in the complaint is nevertheless 'integral' to the complaint and, accordingly, a fair object of consideration on a motion to dismiss. A document is integral to the complaint 'where the complaint relies heavily upon its terms and effect.'" Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir.

2016) (quoting <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 153 (2d Cir. 2002)).

## III. DISCUSSION

Federal law prohibits possession of a firearm by any person "who has been convicted in any court of[] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(g)(1). The plaintiff is subject to Section 922(g)(1) due to his 1988 felony conviction for receiving ammunition while under indictment, and he contends that Section 922(g)(1) is unconstitutional as applied to him "[o]n account of [his] unique personal circumstances, including but not limited to the facts and nature of his non-violent 1988 felony conviction, the passage of time since that conviction, Mr. Campiti's long, law-abiding history, and the lack of danger that his possession of a firearm would pose." Compl. ¶ 27.

"An as applied challenge 'requires an analysis of the facts of a particular case to determine whether the application of a statute, even one constitutional on its face, deprived the [plaintiff] to whom it was applied of a protected right.'" <u>Goe v. Zucker</u>, 43 F.4th 19, 30 (2d Cir. 2022) (quoting <u>Field Day, LLC v. Cty. of Suffolk</u>, 463 F.3d 167, 174 (2d Cir. 2006)). With respect to the right to bear arms, the Supreme Court has held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects

that conduct." <u>N.Y. State Rifle & Pistol Ass'n v. Bruen</u>, 142 S.Ct. 2111, 2126 (2022). In such cases, "[t]o justify its regulation" of conduct presumptively protected by the Second Amendment's plain text, "the government must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation." <u>Id.</u> Applying <u>Bruen</u> to the plaintiff's as-applied challenge to Section 922(g)(1) requires a determination as to (1) whether the Second Amendment's plain text covers the plaintiff's potential conduct and, if so, (2) whether the defendants have demonstrated that the regulation at issue here is consistent with the Nation's historical tradition of firearm regulation.

The plain text of the Second Amendment covers the plaintiff's potential conduct. The Second Amendment provides that "the right of the people to keep and bear Arms[] shall not be infringed." <u>U.S. Const.</u>, amend. II. In <u>District of Columbia v. Heller</u>, the Court began its analysis with the "strong presumption that the Second Amendment right is exercised individually and belongs to all Americans." 554 U.S. 570, 581 (2008). The Court has generally described "the people" who exercise this right individually as including "ordinary, law-abiding, adult citizens." <u>Bruen</u>, 142 S.Ct. at 2134. <u>See also Heller</u>, 554 U.S. at 635 (describing "the people" as including "law-abiding, responsible citizens"). However, for purposes of

the Second Amendment, the phrase "the people" is interpreted consistently with the First, Fourth, Ninth, and Tenth Amendments as "a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." Id. at 580 (quoting United States v. Verdugo-Urquidez, 494 U.S. 259, 265 (1990)). Because the plaintiff is "a citizen of . . . the United States," Compl. at ¶ 1, he belongs to our national community and is among "the people" whose rights are presumptively protected by these amendments to the Constitution, notwithstanding his felony conviction. See Kanter v. Barr, 919 F.3d 437, 453 (7th Cir. 2019) (Barrett, J., dissenting) ("Neither felons nor the mentally ill are categorically excluded from our national community."). In addition, there is no dispute that the plaintiff's proposed conduct--possessing a firearm--falls within the scope of the Second Amendment. Thus, the defendants have the burden of showing that their regulation of the plaintiff's conduct is consistent with the Nation's historical tradition of firearm regulation.

The defendants have met that burden. "Like most rights, the right secured by the Second Amendment is not unlimited." Heller, 554 U.S. at 626. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." Id. at 634-35. "[E]vidence of 'how the Second Amendment

-7-

was interpreted from immediately after its ratification through the end of the 19th century' represent[s] a 'critical tool of constitutional interpretation.'" Bruen, 142 S.Ct. at 2136 (quoting Heller, 554 U.S. at 605). "[T]he Second Circuit has not explicitly determined whether section 922(g)(1) burdens conduct protected by the Second Amendment as applied to nonviolent felons." Defs.' Mem. (ECF No. 16-1) at 8. But in Heller, the Court described "longstanding prohibitions on the possession of firearms by felons," 554 U.S. at 626, as "presumptively lawful," id. at 627 n.26, and a majority of the Court in Bruen expressly affirmed that characterization, see Bruen, 142 S.Ct. at 2162 (Kavanaugh, J., joined by Roberts, C.J., concurring); id. at 2189 (Breyer, J., joined by Kagan, Sotomayor, JJ., dissenting).

The felon-in-possession ban the plaintiff challenges is consistent with our historical tradition of firearm regulations. "[L]egislatures have the power to prohibit dangerous people from possessing guns." Kanter, 919 F.3d at 451 (Barrett, J., dissenting). In Heller, the Court recognized the 18th-century Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents as a "highly influential" "precursor" to the Second Amendment. Heller, 554 U.S. at 604. That minority report suggested an addition stating, "That the people have a right to bear arms for the defense of themselves and their own State or the United States, or for the

purpose of killing game; and <u>no law shall be passed for
disarming the people or any of them unless for crimes committed,
or real danger of public injury from individuals</u>." <u>Kanter</u>, 919
F.3d at 455 (Barrett, J., dissenting) (quoting 2 BERNARD
SCHWARTZ, THE BILL OF RIGHTS: A DOCUMENTARY HISTORY 675, 681
(1971)) (emphasis added). Also, "Samuel Adams's proposed
language to the Massachusetts convention . . . would have
limited the right to 'peaceable citizens.'" <u>Kanter</u>, 919 F.3d at
455 (Barrett, J., dissenting). These proposals reflect a concern
with "threatened violence and the risk of public injury," <u>id.</u> at
456, and they reflect the policy of "founding-era legislatures"
of "categorically disarm[ing] groups whom they judged to be a
threat to the public safety," <u>id.</u> at 458. Thus, the "state can
take the right to bear arms away from a category of people that
it deems dangerous," and "it may do so based on present-day
judgments about categories of people whose possession of guns
would endanger the public safety." <u>Id.</u> at 464.

In adopting Section 922(g)(1), Congress concluded that all
persons convicted of a felony, including those convicted of
nonviolent felonies, are in a category of people whose
possession of guns would endanger the public safety. Section
925(c), enacted alongside Section 922 as part of the Gun Control
Act of 1968, allows "[a] person who is prohibited from
possessing . . . firearms or ammunition" to "make application to

the Attorney General for relief from the disabilities imposed by
Federal laws with respect to . . . possession of firearms." 18
U.S.C. § 925(c). Section 925(c) provides that the Attorney
General "may grant such relief if it is established to his
satisfaction that the circumstances regarding the disability,
and the applicant's record and reputation, are such that the
applicant will not be likely to act in a manner dangerous to
public safety and that the granting of the relief would not be
contrary to the public interest." Id. In 1992, however, Congress
"barr[ed] the use of appropriated funds to process applications
for relief" under 18 U.S.C. § 925(c). Defs.' Mem. at 4. Congress
found that the government was unable to engage in the "very
difficult and subjective task" of determining which felons were
not a "danger to public safety" and worried about the
"devastating consequences for innocent citizens if the wrong
decision is made." S. Rep. No. 102-353, at 19-20 (1992). "In a
1995 report to the House, the Committee on Appropriations
stated: 'For the fourth consecutive year, the Committee has
added bill language prohibiting the use of Federal funds to
process applications for relief from Federal firearms
disabilities. . . . We have learned sadly that too many of these
felons whose gun ownership rights were restored went on to
commit violent crimes with firearms.'" United States v. McGill,
74 F.3d 64, 68 n.2 (5th Cir. 1996) (quoting H.R. Rep. No. 183,

104th Cong., 1st Sess. 23 (1995)). Thus, the suspension of applications for relief under Section 925(c) reflected a present-day judgment by Congress that felons as a group are a category of people whose possession of guns endangers the public safety.

As other courts have noted, the available data reflects that "someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use," United States v. Yancey, 621 F.3d 681, 685 (7th Cir. 2010), and that "nonviolent offenders not only have a higher recidivism rate than the general population," but also that "a large percentage of the crimes nonviolent recidivists later commit are violent," Kammerling v. Lappin, 553 F.3d 669, 683 (D.C. Cir. 2008). "[H]istory suggests that when the legislature restricts the possession of firearms by discrete classes of individuals reasonably regarded as posing an elevated risk for firearms violence, prophylactic regulations of this character should be sustained." L. Rosenthal, *The Limits of Second Amendment Originalism and the Constitutional Case for Gun Control*, 92 Wash U. L. Rev. 1187, 1239 (2015).

Here, the plaintiff's conviction is for the offense of receipt of ammunition while under indictment for receipt of stolen property. Thus, his disqualifying felony conviction is not "an exceptional federal or state felony unmoored from the

bar's historical underpinnings." Folajtar v. Att'y Gen., 980
F.3d 897, 911 (3d Cir. 2020).

The plaintiff argues that prohibiting nonviolent felons
from possessing a firearm for self-defense is not consistent
with this Nation's historical tradition of firearm regulation.
The plaintiff cites scholarship explaining that "bans on
convicts possessing firearms were unknown before World War I."
C. Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.
L. & Pub. Pol'y 695, 708 (2009). See also A. Winkler, *Heller's
Catch-22*, 56 UCLA L. Rev. 1551, 1563 (2009) ("The Founding
generation had no laws . . . denying the right to people
convicted of crimes."); C. Larson, *Four Exceptions in Search of
a Theory: District of Columbia and Judicial Ipse Dixit*, 60
Hastings L. J. 1371, 1376 (2009) ("[S]tate laws prohibiting
felons from possessing firearms or denying firearms licenses to
felons date from the early part of the twentieth century.").
These articles support the conclusion that "laws specifically
disarming nonviolent felons are relatively recent." Defs.' Reply
at 4. They also support the conclusion that laws disarming even
violent felons specifically are relatively recent. See Larson,
60 Hastings L. J. at 1376 ("In sum, felon disarmament laws
significantly postdate both the Second Amendment and the
Fourteenth Amendment."); Marshall, 32 Harv. J. L. & Pub. Pol'y
at 698 ("The federal 'felon' disability--barring any person

convicted of a crime punishable by more than a year in prison from possessing any firearm--is less than fifty years old."); Winkler, 56 <u>UCLA L. Rev.</u> at 1563 n.68 ("[T]he federal government effectively banned felons from purchasing firearms through the Federal Firearms Act of 1938."). But while no 18th- or 19th-century laws specifically banned felons from possessing firearms, the defendants have shown that there exists a relevant historical analogue--prohibitions on firearm possession by individuals whom the state deems dangerous--and have also shown that Congress has reasonably decided that nonviolent felons are among those individuals. <u>See</u> <u>Bruen</u>, 142 S.Ct. at 2133 ("[A]nalogical reasoning requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.").

### IV.  CONCLUSION

Accordingly, the defendants' Motion to Dismiss (ECF No. 16) is hereby GRANTED.

The Clerk shall close this case.

It is so ordered.

Dated this 10th day of January 2023, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge

-13-